IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

RAY E. SUMMERLIN,                    *

       Plaintiff             *

vs.                                  *
                                           CASE NO. 3:04-CV-34 (CDL)
GEORGIA-PACIFIC CORPORATION          *
LIFE, HEALTH AND ACCIDENT PLAN
and WAUSAU BENEFITS, INC.            *

       Defendants            *

## O R D E R

The Court presently has pending before it Defendants' Summary Judgment Motion.  As discussed below, Defendants' motion is denied, and based upon the stipulation of facts agreed to by the parties, the Court finds that Plaintiff is entitled to judgment as a matter of law.

## FACTUAL BACKGROUND

The parties have stipulated to the facts in this case.  Plaintiff Ray E. Summerlin was, at all relevant times, a covered person in the Georgia-Pacific Corporation Life, Health and Accident Plan ("the Plan").  His dependent spouse, Janet, was also covered by the Plan. The Plan is a self-funded welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA).  In 1999, Mrs. Summerlin incurred medical expenses, and the Plan made payments on her behalf in the amount of $80,597.04. Some of the medical benefits paid by the Plan arose out of alleged medical malpractice by Mrs. Summerlin's treatment providers. Mrs. Summerlin filed a malpractice suit against her treatment providers, and the suit was settled for $115,000.  In February 2003,

after attorney's fees and costs were deducted, Mr. and Mrs. Summerlin received a check for $52,217.23, representing their net recovery for the medical malpractice claim.  This recovery was not sufficient to fully compensate them for their injuries, including medical expenses, lost wages, and pain and suffering.

The Plan contends that because it paid benefits of $80,597.04 for expenses arising from the Summerlins' medical malpractice claim and because the Summerlins recovered from a third party on that claim, the Plan is entitled to reimbursement of the benefits it paid relating to the medical malpractice claim.  The Plan also argues that it may offset the amounts it paid relating to the malpractice claim against future benefits payable under the Plan.  The Summerlins maintain that their malpractice claim recovery did not fully compensate them for their damages and that the Plan is therefore not entitled to any reimbursement or offset for the amounts it paid.  The Plan responds that the Plan agreement authorizes reimbursement and offset even if its Plan participants are not fully compensated or made whole.

In support of its position, the Plan relies upon the following subrogation and reimbursement provisions in the Plan contract:

> 5. If you receive any payment (whether or not characterized as reimbursement for a medical expense) as a judgment, settlement or otherwise from any person or entity (including and without limitation to the third party's or your own insurance company) with respect to the sickness, injury or other condition which gives rise to expenses which the Plan pays, including any such payment made as a result of the requirements under a "no-fault" motor vehicle insurance statute or other similar legislation, or under the personal injury projection provision in an automobile insurance policy, you shall reimburse the Plan from such payments to the extent of the expenses paid under the Plan regardless whether the judgment, settlement or other payments allocates any specified amount to reimbursement for medical expenses and regardless whether such expenses are paid prior to or after the date of such judgment, settlement or otherwise.  The Plan Administrator has the

discretion (but is not required) to estimate the future amount of such expenses in lieu of requiring you to reimburse the Plan as such expenses are incurred.

6. You shall enter into an agreement which shall expressly assign any payments made to you or your dependent by a third party or an insurer to the Plan, and which shall require you to direct your attorney (and other representatives) in writing to retain separately from any judgment, settlement or otherwise that they receive on your behalf an amount of money sufficient to reimburse the Plan as required under such agreement and to pay such money to the Plan Administrator. The Plan will have the right of first recovery even when a Participant or Beneficiary is not made whole. In the event you do not sign or refuse to sign such an agreement, the Plan has no obligation to make any payment for any treatment required as a result of the act or omission of a third party. The form of the agreement issued by the Plan Administrator for this purpose is expressly incorporated in this Plan and is available for your review at anytime. A copy will be provided to you upon request to your local Human Resources Representative.

7. If you receive any payment as a judgment, settlement or otherwise described in paragraph 5 of this section [the reimbursement provision] and you fail to timely and fully reimburse the Plan as provided in that paragraph for any such amounts owed by you to the Plan, they may be offset against any future claims you make under the Plan (regardless whether the claims are for you or a dependent).

(Stipulation of Facts Ex. C at 71.)

In the joint stipulation of facts, the parties erroneously represented that paragraph 5 contained the following sentence: "The Plan will have the right of first recovery even when a Participant or Beneficiary is not made whole." In its motion for summary judgment, Defendant relied upon that language to support its contention that it was entitled to offset Plaintiff's benefits. After the Court observed that no such language existed in paragraph 5, the parties submitted supplemental briefing. The Plan now contends that the Summerlins "almost certainly" signed a reimbursement agreement pursuant to paragraph 6. However, the Plan has not been able to produce a copy of the agreement, and Plaintiff does not recall signing such an

agreement.  The Plan further contends that it is entitled to offset in the absence of a signed reimbursement agreement under the Plan's reimbursement and offset provisions.

In any event, after receiving the funds pursuant to the settlement agreement with Mrs. Summerlin's medical treatment providers, Mr. and Mrs. Summerlin did not reimburse the Plan for the claims it paid on Mrs. Summerlin's behalf.  Based on the reimbursement and offset provisions, the Plan's third-party administrator, Wausau Benefits, notified Plaintiff of its intent to offset future claims for Plaintiff and his dependents until the Plan is reimbursed the $80,597.04 it paid on behalf of Mrs. Summerlin.  Plaintiff has incurred, and continues to incur, medical expenses covered by the Plan that are unrelated to Mrs. Summerlin's 1999 claims, and the Plan's third-party administrator has begun offsetting the amount it contends the Plan is owed for the benefits paid on behalf of Mrs. Summerlin against the amounts due on Plaintiff's claims.  Plaintiff filed suit against the Plan, seeking damages and an injunction against further offsetting by Defendants.

### DISMISSAL OF THE THIRD-PARTY ADMINISTRATOR

The Plan's third-party administrator, Wausau Benefits, Inc., was originally named as a Defendant in this case.  The parties have stipulated that Wausau Benefits should be dismissed with prejudice. Accordingly, Defendant Wausau Benefits, Inc., is dismissed from this action with prejudice.  The only remaining Defendant in this case is Georgia-Pacific Corporation Life, Health and Accident Plan.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file" show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  In this case, the parties filed a joint stipulation of facts, and both parties rely upon it.  Stipulations are a proper evidentiary basis for a summary judgment.  *Munoz v. Int'l Alliance of Theatrical Stage Employees and Moving Picture Mach. Operators*, 563 F.2d 205, 213 (5th Cir. 1977).[1]  *See also In re Durability Inc.,* 212 F.3d 551, 555-556 (10th Cir. 2000) (noting that "[s]tipulations are entered into in order to dispense with proof over matters not in issue, thereby promoting judicial economy at the convenience of the parties" and that courts enforce stipulations as a general rule, "absent circumstances tending to negate a finding of informed and voluntary assent of a party to the agreement").

Plaintiff has not indicated that there are material facts to be considered that were not included in the joint stipulation of facts, nor has Plaintiff contended that there is a genuine issue as to any material fact.  Rather, Plaintiff's argument centers upon a legal issue:  whether the Plan may legally offset the amount the Plan contends it is owed for the payments made on behalf of Mrs. Summerlin against Plaintiff's claims for medical expenses.  Therefore, this case can appropriately be decided as a matter of law.

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DISCUSSION

*1. The Georgia Anti-Subrogation Statute Does Not Apply in this Case*

Plaintiff contends that he is not obligated to reimburse the Plan because Georgia's anti-subrogation statute, O.C.G.A. § 33-24-56.1, applies and prevents the Plan from requiring reimbursement of the payments made on behalf of Mrs. Summerlin—and from enforcing the reimbursement claim via setoff—because the settlement did not make Mr. and Mrs. Summerlin whole.  O.C.G.A. § 33-24-56.1 provides that benefit providers, including employee benefit plans, may require reimbursement of medical expenses paid on behalf of an injured party in the event of a recovery for that personal injury from a third party.  O.C.G.A. § 33-24-56.1(b) (2004).  There is a limitation to this rule:  reimbursement may be required only if the amount of recovery *exceeds* the sum of all losses incurred as a result of the injury.  *Id.*  Furthermore, under this law, benefit providers may not withhold or set off insurance benefits as a means of enforcing a claim of reimbursement.  O.C.G.A. § 33-24-56.1(f).

The parties have stipulated that the settlement was not sufficient to fully compensate Mr. and Mrs. Summerlin for their injuries.  Therefore, if the complete compensation rule of O.C.G.A. § 33-24-56.1 applied in this case, Defendants would not be entitled to seek reimbursement from the Summerlins or to set off the amount the Plan paid on behalf of Mrs. Summerlin against Plaintiff's benefits.  *See* O.C.G.A. § 33-24-56.1; *Thurman v. State Farm Mut. Auto. Ins. Co.*, 278 Ga. 162, 164, 598 S.E.2d 448, 451 (2004).  But if ERISA preempts O.C.G.A. § 33-24-56.1, the statute would not apply to prevent Defendants from enforcing the reimbursement claim.

ERISA preempts all state statutes that "relate to" employee benefit plans.  29 U.S.C. § 1144(a); *see also FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990); *Swerhun v. Guardian Life Ins. Co.*, 979 F.2d 195, 197 (11th Cir. 1992).  There is an exception to this rule:  under ERISA's "saving clause," a state statute that "relates to" an employee welfare plan may escape preemption if it regulates insurance.  *See* 29 U.S.C. § 1144(b)(2)(A); *see also Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 334 (2003); *Swerhun*, 979 F.2d at 197.  But there is an exception to the exception:  even if the state law at issue falls within the saving clause, ERISA's "deemer clause" exempts certain ERISA plans from state regulation.   *See* 29 U.S.C. § 1144(b)(2)(B); *Holliday*, 498 U.S. at 61; *Swerhun*, 979 F.2d at 197.

Defendant contends that O.C.G.A. § 33-24-56.1 is preempted by ERISA and therefore does not apply in this case.  There is no contention that the Georgia anti-subrogation statute does not "relate to" ERISA covered plans.  Therefore, if the statute is not saved by ERISA's saving clause or if the Plan in this case is exempt from the statute by virtue of ERISA's deemer clause, the Georgia anti-subrogation statute does not apply.

Defendant is correct that ERISA preempts O.C.G.A. § 33-24-56.1 in this case.  Pretermitting the question whether O.C.G.A. § 33-24-56.1 is saved by ERISA's saving clause,[2] the Plan in this case is

---

[2]Defendant argues that O.C.G.A. § 33-24-56.1 is not "specifically directed toward" the insurance industry and is thus not saved by ERISA's saving clause because it applies to "benefit providers" and not just "insurers."  *See Miller*, 538 U.S. at 341-42.  However, Georgia chose to make O.C.G.A. § 33-24-56.1 part of its Insurance Code.  *See* O.C.G.A. § 33-1-1.  The statute only applies to subrogation of benefits paid by benefit providers "under a policy of insurance or contract with an individual or group."  From this, it is reasonable to conclude that Georgia "specifically directed" O.C.G.A. § 33-24-56.1 toward the insurance industry.

exempted from the reach of the statute by virtue of ERISA's deemer clause. ERISA's deemer clause exempts certain ERISA plans from state laws that "regulate insurance" within the meaning of the saving clause. 29 U.S.C. § 1144(b)(2)(B); *Holliday*, 498 U.S. at 61. The Court in *Holliday* held that the deemer clause exempts self-funded ERISA plans from state laws that "regulate insurance." *Holliday*, 498 U.S. at 61. Because the plan at issue in *Holliday* was a self-funded welfare benefit plan, ERISA preempted the application of Pennsylvania's anti-subrogation statute to the plan. *Id.* at 65. The Plan at issue in this case, like the plan in *Holliday*, is a self-funded welfare benefit plan governed by ERISA, so it is exempt from O.C.G.A. § 33-24-56.1 under ERISA's deemer clause. Therefore, the Georgia statute does not apply to prevent Defendants from enforcing the reimbursement claim. *See* 29 U.S.C. § 1144(b)(2)(B); *Holliday*, 498 U.S. at 61.

*2. The Make-Whole Doctrine Applies in this Case*

Plaintiff argues that even if Georgia's anti-subrogation law does not apply, allowing Defendants to demand reimbursement in this case is against public policy because Plaintiff has not been made whole. Under the make-whole doctrine, "an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the *excess* received over the total amount of his loss." *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989). In the Eleventh Circuit, the make-whole doctrine is the default rule in ERISA cases. *Cagle v. Bruner*, 112 F.3d 1510, 1521 (11th Cir. 1997). The parties can, however, contract out of the doctrine. The make-whole doctrine does not apply if there is "clear language rejecting it" in the insurance contract. *Id.* at 1521-22.

For a plan to escape the doctrine, "it need only include language in the plan explicitly providing the [plan] with the first right of recovery, even when a participant or beneficiary is not made whole." *Id.* at 1522.  The ERISA plan at issue in *Cagle* did not contain any clear language rejecting the make-whole doctrine, so the doctrine applied to that case, and the plan was not allowed to recover from any third party until the beneficiary was made whole.  *Id.*

The Plan at issue in this case has two relevant reimbursement options:  the "Offset Option" and the "Agreement Option."  Paragraph 7 contains the Offset Option, which provides that any payments received as judgments or settlements to compensate for expenses which the Plan paid may be offset against future claims the participant makes under the Plan.  The Offset Option does not require a written agreement. Paragraph 6 contains the Agreement Option, which requires the participant to sign a written reimbursement agreement establishing a lien on any recovery.  If the participant does not sign such an agreement, the Plan may refuse to make benefit payments.

It is clear that the Plan rejects the make-whole doctrine under the Agreement Option because paragraph 6 specifically states that the Plan has the right of first recovery, even when a participant or beneficiary has not been made whole.  However, such language does not appear anywhere in the Offset Option—there is no language in paragraph 7 clearly rejecting the make-whole doctrine.  Furthermore, there is no language clearly rejecting the make-whole doctrine in paragraph 5, which is referenced in paragraph 7 as describing which payments must be reimbursed to the Plan.   Under the Plan's interpretation of the contract, it is immaterial that the Offset Option does not specifically reject the make-whole doctrine.  Rather,

the Plan asserts that the right of first recovery language in paragraph 6 should be read into paragraph 7.  The Plan further contends that its decision to offset Plaintiff's benefits under this interpretation is entitled to deference.

The Plan is correct that its decision to offset under this interpretation is subject to the arbitrary and capricious standard of review.  A denial of ERISA benefits is subject to *de novo* review unless the benefit plan gives its administrator discretionary authority to construe the terms of the plan.  If the plan does reserve that discretion to the administrator, the arbitrary and capricious standard of review applies unless the administrator's decision creates a conflict of interest.  *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Cagle*, 112 F.3d at 1516.  Section 27 of the Plan provides:  "The Plan Administrator has the exclusive responsibility and complete discretionary authority to control the operation and administration of this plan, with all powers necessary to enable it to properly carry out such responsibility, including but not limited to, the power to construe the terms of this plan[.]"  (Stipulation of Facts Ex. C at 77.)  Plaintiff does not contend that there is a conflict of interest.  Therefore, the arbitrary and capricious standard of review applies in this case.

Under the arbitrary and capricious standard of review, the Court is limited to determining whether "the contested interpretation was made rationally and in good faith."  *Blank v. Bethlehem Steel Corp.*, 926 F.2d 1090, 1093 (11th Cir. 1991); *accord Cagle*, 112 F.3d at 1518. There are a number of factors the courts take into account to determine whether an interpretation was arbitrary and capricious, including "the uniformity of the [Plan's] construction, the

10

reasonableness of its interpretation and possible concerns with the way unexpected costs may affect the future financial health of the plan." *Blank*, 926 F.2d at 1093.  The key factor that applies in this case is the reasonableness of the interpretation.  The Plan argues that "the circumstances under which the Plan may seek reimbursement are determined by the subrogation language as a whole."  The Plan further contends that there is an ambiguity as to whether the make-whole doctrine is rejected across the board and that this ambiguity must be resolved in favor of the Plan administrator's interpretation. But the contract clearly gives the Plan two options for seeking reimbursement.  Only one of these options includes the right of first recovery language.  The two reimbursement options are separate and distinct.  The options do not reference each other, nor do they depend upon each other.  Therefore, it would be incongruous to extract a portion of one option and read it into the other.  The Plan's interpretation is unreasonable. Consequently, the Court cannot find that it was made rationally and in good faith.  Thus, the Plan's interpretation fails because it is arbitrary and capricious.  Under the Plan as it is drafted, a reimbursement agreement must be executed for the right of first recovery provision to apply.

     The Plan also contends that not reading the right of first recovery language into the Offset Option would lead to inequitable results and create incentives for participants to violate the Plan by not signing reimbursement agreements.  These arguments are without merit.  The Plan drafted its own contract.  If it wanted to escape the make-whole doctrine under the Offset Option, it could have included language in paragraph 7 explicitly providing that the Plan may offset payments received from third parties against future claims even when

the participant or beneficiary has not been made whole.  Furthermore, under paragraph 6, the Plan may withhold benefits from those participants who refuse to sign reimbursement agreements.  Therefore, it has a remedy under paragraph 6 to assure compliance with the Plan agreement.  The Plan's failure to enforce its own Agreement Option should not be remedied, however, by a tortured reading of the Plan contract that arbitrarily extrapolates the "right of first recovery" language from paragraph 6 and deposits it into paragraph 7.  Again, under the Plan as it is drafted, a reimbursement agreement must be executed for the right of first recovery provision to apply. Therefore, the Court finds that the Plan does not clearly reject the make-whole doctrine under the Offset Option and that the Plan's interpretation to the contrary was arbitrary and capricious.  For these reasons, the Plan is not entitled to offset Plaintiff's claims under paragraph 7.

*3. The Reimbursement Agreement*

The Plan contends that even if it is not entitled to offset under paragraph 7, it is still entitled to reimbursement under paragraph 6 because Mr. and Mrs. Summerlin "almost certainly" signed a reimbursement agreement.[3]  However, despite its "best efforts," the Plan has not been able to locate a copy of the agreement.  Plaintiff does not recall signing such an agreement.

---

[3]Plaintiff correctly observes that he cannot assign his *wife's* rights. *See* Rest. 2d of Contracts § 324 (1981); *see also Bank of Cave Spring v. Gold Kist, Inc.*, 173 Ga. App. 679, 680, 327 S.E.2d 800, 802 (1985) (noting that assignor must intend to make the assignment).  The Plan's contention, however, is that *both* Mr. and Mrs. Summerlin signed the agreement, not that Plaintiff signed an agreement purporting to assign his wife's rights.

For the Plan to rely upon a reimbursement agreement, it must prove that such an agreement was executed.  The Plan's evidence of this agreement is an affidavit from an employee of its third-party administrator stating that the Summerlins "almost certainly" signed a reimbursement agreement.  The employee came to this conclusion for two reasons:  1) letters to the Summerlins regarding their claims specifically reference a reimbursement agreement, and 2) the Summerlins' file did not contain correspondence from the Summerlins indicating that they refused to sign a reimbursement agreement.

Generally, to prove the contents of a writing in federal court, the original writing is required.  Fed. R. Evid. 1002.  If the original writing cannot be produced because it has been lost or destroyed through no fault of the party seeking to rely upon it, the party may be permitted to introduce secondary evidence of the contents of the writing.  Fed. R. Evid. 1004(1); *see United States v. Holley*, 463 F.2d 634, 637 (5th Cir. 1972).  It is true that the question whether a writing *existed* and whether the secondary evidence accurately reflects its terms is a question for a trier of fact rather than the court, but the proponent of the writing must introduce some evidence of the existence and contents of the original to get to the factfinder.  *See* Fed. R. Evid. 1008.  The Plan has failed to introduce evidence sufficient to allow a trier of fact to find the existence and contents of a reimbursement agreement between the Summerlins and the Plan.  The Plan cannot state with certainty that there actually was a reimbursement agreement.  Its third party administrator's employee had no personal knowledge regarding whether Plaintiff signed an agreement.  She opined simply that Plaintiff "almost certainly" signed an agreement because under the Plan's administrative procedures,

Plaintiff would not have received a letter referencing a reimbursement agreement unless he had signed an agreement.  This is not enough.  The Plan has not introduced evidence, e.g, of the terms of the "lost" agreement; it has introduced no evidence that the Plan routinely required every participant and beneficiary to execute an identical reimbursement agreement; and it has offered no evidence that Mrs. Summerlin signed a reimbursement agreement.  For these reasons, the Plan has failed to prove that a reimbursement agreement between the Summerlins and the Plan was executed.  Therefore, the Plan may not rely upon a reimbursement agreement to seek reimbursement from Plaintiff.

CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for summary judgment.  Accordingly, per the stipulation of the parties, the Court orders Defendant Georgia-Pacific Corporation Life, Health and Accident Plan to pay all claims that have been, or may be, submitted for payment by Plaintiff or his dependents that would, except for the Plan's claim for reimbursement, otherwise be eligible for payment and payable by the Plan.

IT IS SO ORDERED, this 26th day of April, 2005.

S/Clay D. Land
       CLAY D. LAND
UNITED STATES DISTRICT JUDGE

14